## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| MICHELIN RETREAD TECHNOLOGIES, INC., | ) | CIVIL ACTION NO: |
| | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **JUDGMENT AND INJUNCTIVE** |
| v. | ) | **RELIEF** |
| | ) | |
| JACK'S TIRE & OIL MANAGEMENT | ) | |
| COMPANY, INC., and JACK'S TIRE | ) | |
| INVESTMENT COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Michelin Retread Technologies, Inc. ("MRTI"), for its Complaint against Defendants Jack's Tire & Oil Management Company, Inc., ("Jack's Tire") and Jack's Tire Investment Company, Inc, ("Jack's Investment") alleges and states as follows:

### INTRODUCTION

1.     This is a dispute between a franchisor, MRTI, and one of its largest franchisees, Jack's Tire, over the interpretation of identical provisions in multiple retread tire and service center franchise agreements.

2.     Jack's Investment is the parent company of Jack's Tire. Jack's Investment agreed to guarantee the performance and fulfillment by Jack's Tire of all its obligations under the MRTI and MCSN Franchise Agreements (defined below) as fully and to the same extent as though it and Jack's Tire had been named in the agreements as franchisees with joint and several liability. Jack's Tire and Jack's Investment are collectively referred to in this Complaint as "Jack's."

3.     On May 1, 2020, MRTI and Jack's entered into five separate, but substantively identical, retread franchise agreements for locations in Fresno, California; Denver, Colorado; Boise, Idaho; Logan, Utah; and Salt Lake City, Utah (the "MRTI Franchise Agreements").

4.     On May 1, 2020, MRTI and Jack's also entered into a Michelin Commercial Service Network Franchise Agreement (the "MCSN Franchise Agreement"), which authorized Jack's to operate Service Centers in Arizona, Colorado, Idaho, and Utah.

5.     The MRTI and MCSN Franchise Agreements do not expire until May 1, 2030. Pursuant to those agreements, Jack's supplies Michelin brand (Michelin, BFGoodrich, and Uniroyal) new and MRTI retreaded truck tires and related services from Denver, Colorado, to Fresno, California.

6.     The MRTI and MCSN Franchise Agreements define any sale of assets by the franchisee *other than the sale of inventory in the ordinary course of business* as a "Transfer of the Franchise."

7.     The MRTI and MCSN Franchise Agreements specifically preclude any Transfer of the Franchise without MRTI's written approval, as well as compliance with certain other conditions, including an assignment of the Franchise Agreements to the transferee.

8.     The MRTI and MCSN Franchise Agreements provide that any Transfer of the Franchise without MRTI's written approval, or without complying with the conditions of Section 12 of the Franchise Agreements, "is void and of no force or effect."

9.      Jack's has entered into agreements with Purchaser[1] ("Purchaser"), a Bridgestone/Bandag franchisee and MRTI's principal competitor, pursuant to which Jack's will retain the MRTI Franchise Agreement but sell *all other assets* necessary to perform its obligations under that agreement. The transaction would leave Jack's an empty shell, unable to perform any of its obligations under the MRTI Franchise Agreements for the six plus years remaining on the term.

10.     At the same time, Jack's has included the MCSN Franchise Agreement and all of the real estate, service vehicles, and other assets need to perform its obligations under that agreement in the sale to Purchaser, in direct violation of the MCSN Franchise Agreement.

11.     Jack's delivered the Purchaser asset sale agreement ("ASA") to MRTI on December 11, 2023, purportedly to allow MRTI to match Purchaser's price pursuant to a provision of the agreements that provides MRTI with a Right of First Refusal ("ROFR") whenever an MRTI franchisee seeks to Transfer the Franchise.

12.     The ASA constitutes a Transfer of the Franchise that is in violation of the MRTI and MCSN Franchise Agreements, including specifically Section 12, governing Transfer of the Franchise.

13.     Jack's has not asked for MRTI's written approval of the transaction contemplated by the ASA, has not conditioned consummation of the transaction contemplated by the ASA on MRTI's written approval, and has indicated that it will complete and close the ASA transaction without written approval if MRTI does not purchase the assets for the same price and on the same

---

[1] MRTI has filed a redacted copy of the ASA. The identification of the Purchaser will be provided to the Court in an unredacted copy of the ASA.

terms as contained in the ASA. Further, the ASA does not include any agreement to assign the MRTI franchises to the transferee.

14.    The transaction contemplated by the ASA violates Section 10 of the MRTI and MCSN Franchise Agreements in multiple respects, including (a) that Purchaser has obtained or will obtain from Jack's access to MRTI's trade secrets and other confidential information, including customer lists, and (b) the transaction contemplated by the ASA will result in a diversion of business to a competitor and injure the goodwill of the MRTI retread and MCSN Service Franchise System.

15.    Under the MRTI and MCSN Franchise Agreements, the parties agreed that an actual or threatened violation of Sections 10 or 12 would result in irreparable injury to MRTI for which no adequate remedy at law exists.

16.    Jack's and each of its owners further consented "to the issuance of an injunction at MRTI's request (without posting a bond or other security) prohibiting any conduct in violation of" Sections 10 or 12.

17.    There is an existing and actual legal controversy between MRTI and Jack's that can be resolved by a declaratory judgment regarding the parties' rights and obligations under the MRTI and MCSN Franchise Agreements.

18.    MRTI seeks declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202, that (a) the ASA constitutes a Transfer of the Franchise within the meaning of the MRTI and MCSN Franchise Agreements; (b) the MRTI and MCSN Franchise Agreements require Jack's to make a written request of MRTI for written approval of the ASA, obtain MRTI's written approval, and comply with all of the conditions of Section 12; (c) any attempt by Jack's to complete

and close the ASA without MRTI's written approval and compliance with Section 12's conditions voids the sale; and (d) Jack's December 11, 2023 delivery of the proposed ASA is not a bona fide offer that triggers a ROFR because the ASA does not comply with Section 12 of the MRTI and MCSN Franchise Agreements.

19.     As further relief, pursuant to Fed. R. Civ. P. 65, MRTI seeks a temporary restraining order to preserve the status quo pending the Court's decision on MRTI's request for a preliminary injunction to preserve the status quo pending the Court's decision on the declaratory judgments.

20.     The Court may grant injunctive relief to enforce its declarations. 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction.") (citations omitted); *Wade v. Hous. Mgmt., Inc.*, No. 1:14-CV-04923-JMC, 2016 WL 4168605, at *1 (D.S.C. Aug. 8, 2016) ("The Supreme Court has repeatedly recognized that a district court can enforce a declaratory judgment through an injunction issued pursuant to 28 U.S.C. § 2202.") (citations omitted).

21.     MRTI seeks a permanent injunction enforcing the declaratory judgments by requiring Jack's, any affiliates, or other parties acting through or in concert with Jack's, to comply with the MRTI and MCSN Franchise Agreements.

**PARTIES, JURISDICTION, AND VENUE**

22.     Plaintiff MRTI is a corporation organized under the laws of Delaware with its principal place of business in Simpsonville, South Carolina. For purposes of this Complaint based on diversity of citizenship, MRTI is a citizen of Delaware and South Carolina.

23.     Defendant Jack's Tire is a corporation organized under the laws of Utah with its principal place of business in Utah. For purposes of this Complaint based on diversity of citizenship, Jack's Tire is a Utah citizen.

24.     Defendant Jack's Investment is a corporation organized under the laws of Utah with its principal place of business in Utah. For purposes of this Complaint based on diversity of citizenship, Jack's Investment is a Utah citizen.

25.     This Court has subject matter jurisdiction over MRTI's declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, which allows federal courts to issue declaratory judgments in cases that present a valid basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Diversity jurisdiction over this matter is proper because complete diversity exists between Plaintiff and Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

26.     Personal jurisdiction over Jack's and venue in this District are proper because, pursuant to the franchise agreements at issue, Jack's has agreed that the state or federal court of general jurisdiction in the judicial district in which MRTI has its principal place of business at the time of commencement of proceedings shall be the venue and exclusive forum in which to adjudicate any case or controversy related to the MRTI and MCSN Franchise Agreements. Jack's irrevocably submitted to the jurisdiction of this Court and waived any objection to the jurisdiction

or venue of the Court. MRTI's principal place of business is in Simpsonville, South Carolina, which is located in this District and Division.

27.     Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

### The Parties' Franchise Relationship

28.     MRTI designs and develops world class retreading processes and equipment for the retreading of commercial truck tires utilizing Michelin-manufactured tread rubber. Among other things, MRTI licenses this technology to its franchisees. Retreading reduces the total cost of tire ownership and reduces the environmental impact of tire use by extending the usable life of such tires.

29.     Jack's has been an authorized Michelin North America, Inc. ("MNA") new truck tire dealer for more than 50 years. That relationship is governed by the terms of an Authorized Commercial Customer Agreement ("Dealer Agreement").

30.     In addition, Jack's has been a part of the MRTI retread franchise network for approximately 20 years. Within the MRTI franchise system, Jack's operates five MRTI retread plants, described as "Shops" in the franchise documents, in the following locations: Fresno, California; Denver, Colorado; Boise, Idaho; Logan, Utah; and Salt Lake City, Utah.

31.     MRTI Retread Shops produce retreaded tires with the same tread designs and rubber compounds as new Michelin truck tires using Michelin specially processed and designed rubber. The retreading process involves removing old tread fragments, repairing any damage,

resurfacing the tire, then affixing a new tread layer to casings of spent tires. Retreads deliver approximately 90% of the mileage of a new tire.

32.     In addition to operating the retreading plants, Jack's also currently operates 13 Service Centers as an MRTI franchisee in the Michelin Commercial Service Network. These service centers are located in Arizona, Colorado, Idaho, and Utah, and they supply new Michelin-brand truck tires and MRTI retreads, as well as tire-related and general vehicle maintenance services to trucking fleets and other commercial customers.

33.     Between the Dealer Agreement, the five MRTI Shops and 13 MCSN Service Centers, Jack's is the one of the largest suppliers of new Michelin-brand and MRTI retreaded truck tires and related services in the United States. Trucking fleets and other commercial customers rely on Jack's for their new and retread truck tire needs, as well as truck tire-related warranty and general vehicle maintenance services throughout the Mountain West.

34.     Jack's has actively promoted Michelin brands for decades and is associated with Michelin-brand truck tires and MRTI retreads and service by Michelin and MRTI customers.

**The Franchise Agreements**

35.     On May 1, 2020, Jack's executed substantively identical MRTI Franchise Agreements authorizing it to operate MRTI retreading plants in Fresno, California; Denver, Colorado; Boise, Idaho; Logan, Utah; and Salt Lake City, Utah. On the same date, the parties entered into an identical Addendum to each Franchise Agreement ("MRTI Addendum"), amending, replacing, or supplementing some terms in the MRTI Franchise Agreements.

36.     On May 1, 2020, Jack's also entered into an MCSN Franchise Agreement with MRTI, which authorized Jack's to operate Service Centers in Arizona, Colorado, Idaho, and Utah.

The parties also executed an Addendum to the MCSN Franchise Agreement ("MCSN Addendum"), amending, replacing, or supplementing some terms in the MCSN Franchise Agreements.

37.    The MRTI Franchise Agreements expire May 1, 2030, if not renewed. (MRTI Franchise Agreements, § 2.02.) The MCSN Franchise Agreement similarly expires May 1, 2030. (MCSN Franchise Agreement, § 2.02.)

38.    MRTI has complied with all of the terms and conditions of the MRTI Franchise Agreements and the MCSN Franchise Agreement, including the Addendum to each.

### Agreed Dealer and Franchise Obligations

39.    Under the Dealer Agreement, Jack's agreed to "conduct its business in a manner that will maximize the sale of MNA Products ... while enhancing the reputation of and goodwill associated with MNA Brands and MNA Products." (Dealer Agreement § 3.)

40.    The Dealer Agreement also obligates Jack's to service MNA customers who present an MNA tire with a warrantable condition. (Dealer Agreement § 3.F.)

41.    The MRTI Franchise Agreements grant Jack's "the right, and [Jack's] assumes the obligation to operate one [Michelin Retread] Shop" at each franchise location. (MRTI Franchise Agreements, § 2.01.)

42.    The MRTI Franchise Agreements require MRTI to make available to Jack's the standard line of MRTI Rubber Products, and Jack's agrees to maintain at the Shop an inventory of MRTI Rubber Products sufficient in quantity to satisfy reasonable customer demand. (MRTI Franchise Agreements, § 5.01.)

43.     Jack's "agree[d] to exert its best efforts to aggressively market and sell tires retreaded using the MRTI Process ... and to capitalize on the full potential of the Shop." (MRTI Franchise Agreements, § 10.02.)

44.     Jack's further agreed that, during the term of the Franchise Agreements, the "premises of the Shop will not be used for any purpose other than the operation of a Michelin Retread Shop in compliance with this Agreement." (MRTI Franchise Agreements, § 6.03.)

45.     The MCSN Franchise Agreement similarly grants Jack's "the right, and [Jack's] assumes the obligation, to use the MCSN Service System: (i) to operate one or more Service Center(s) within the Service Territory ... and (ii) to offer MCSN Services within the Service Territory ... for the Term." (MCSN Franchise Agreement, § 2.01.)

46.     Jack's agreed "to use its best efforts to be an excellent servicing provider to truck fleets in the United States," "to support the MCSN Services to fleets on an MCSN wide basis," and "to exert its best efforts to provide excellent services using the Michelin System, and to capitalize on the full potential of the Service Center." (MCSN Franchise Agreement, §§ 6.06, 6.13, 10.02.)

47.     The MRTI and MCSN Franchise Agreements thus obligate Jack's to operate five MRTI retreading plants and 13 MCSN service centers from Denver Colorado, to Fresno, California until May 1, 2030. They further obligate Jack's to use its "best efforts" to promote sales of MRTI retreads and to capitalize on the full potential of the Shops and Service Centers.  An essential element of Jack's "best efforts" under the MRTI and MCSN Franchise Agreements is to supply and service MNA National Account customers. (MRTI Franchise Agreement § 6.11 and MCSN Franchise Agreement § 6.13.)

**Agreed Restrictions on Transfers of the Franchises**

48.     During the 10-year term of the MRTI and MCSN Franchise Agreements, the parties agreed to reasonable and specific restrictions on any Transfer of the Franchises.

49.     The MRTI Agreements define "Transfer of the Franchise" to include any direct or indirect, sale, assignment, transfer or other disposition of assets of the Shop, Franchisee, Jack's Tire, or Jack's Investment. The relevant language is as follows:

> The voluntary or involuntary, direct or indirect, sale, assignment, transfer or other disposition of ... the assets, revenues or income of the Shop, Franchisee, Jack's Tire or Jack's Investment, including ... ***any sale, transfer or other disposition of the assets of the Shop, other than the sale of inventory in the ordinary course of business*** ...

(MRTI Addendum § I ¶ 1 (replacing definition of "Transfer of the Franchise") (emphasis added).) The MCSN Franchise Agreement defines Transfer of the Franchise in a virtually identical way, except that it refers to a Service Center rather than Shop. (MCSN Addendum § I ¶ 1.)

50.     Pursuant to Section 12.01 of the MRTI and MCSN Franchise Agreements (each as amended by the Addendum), Jack's agreed that it will not transfer any of the franchises without "MRTI's prior written approval" and without "complying with all of the provisions of Section 12." Jack's further agreed that any transfer without such approval or compliance "is void and of no force or effect":

> Accordingly, except as permitted by Section 12.07, <u>Permitted Transfers,</u> neither Franchisee nor any of Franchisee's Owners may Transfer the Franchise without MRTI's prior ***written approval and without complying with all of the provisions of Section 12***. Any

transfer without such approval or compliance constitutes a breach of this Agreement and is void and of no force or effect.[2]

(MRTI Addendum § I ¶ 10 and MCSN Addendum, § I ¶ 9 (replacing the first paragraph of "Section 12.01, Transfer by Franchisee subject to MRTI's Approval" for each Agreement) (emphasis added, underlining in original).)

51.    Jack's agreed that it would make a written request for MRTI's prior written approval if it proposed a Transfer of the Franchises. (MRTI Franchise Agreement, § 16.11 and MCSN Franchise Agreement, § 17.11 ("Whenever this Agreement or the Transaction Documents require the approval or consent of either party, the other party shall make written request therefor … ").)

52.    Jack's further agreed to a number of conditions that ***must*** be met for any Transfer of the Franchise. Those implicated by the ASA include the following:

> 12.02   Conditions for MRTI's Approval. If MRTI has not exercised its right of first refusal under Section 12.04 below, MRTI will not unreasonably withhold its approval of a Transfer of the Franchise ***that meets all of the reasonable restrictions, requirements and conditions MRTI imposes on the transfer, the transferor(s) and/or the transferee(s), including, but not limited to, the following:***
> …
>
> (c)    the transferee shall agree to ***upgrade the Shop*** and the ***MRTI Equipment*** to conform to MRTI's then current requirements for a Michelin Retread Shop and to ***enroll in MRTI's training program and obtain proper certification for at least one manager*** and all key production personnel;
>
> (d)    ***the transferee (and its owners) shall have taken assignment of and agree to be bound by all of the provisions of the Transaction***

---

[2] Section 12.07 addresses certain stock transfers that were agreed to for estate planning purposes and are not implicated by this dispute, except insofar as they evidence Defendants' understanding of the restrictions on any transfer of the MRTI or MCSN franchises.

> ***Documents***, including the restrictive covenants set forth in Section
> 10 hereof, ***for the remainder of the Term*** and/or the term of the
> applicable Transaction Document, or, at MRTI's option and in
> MRTI's sole discretion, execute MRTI's then current standard form
> of franchise agreement as well as the then current form of the other
> Transaction Documents used in the state in which the Shop is
> located at the time of MRTI's approval (provided that it shall include
> ***a term equal to the remaining balance of the Term***).

(MRTI Franchise Agreement, § 12.02(c) and (d)[3] (emphasis added); *see also* MCSN Franchise

Agreement, § 12.02(c) and (d) (substantively similar provision but, for example, it references a

"Service Center" instead of a "Shop" and "MCSN Equipment" instead of "MRTI Equipment.")

53.     These agreed restrictions on transfers make clear that the parties intended and

agreed that a Transfer of the Franchise under Section 12 would provide for the continued

performance of the MRTI and MCSN Franchise Agreements by the transferee for the remainder

of the Franchise Agreements' terms.

54.     Section 12 of the MRTI and MCSN Franchise Agreements also provides MRTI a

ROFR if "Franchisee or any of its Owners desires to make a Transfer of the Franchise." (MRTI

Franchise Agreement, § 12.04; MCSN Franchise Agreement, § 12.04.) The "Franchisee or such

Owner shall obtain a ***bona fide***, executed written offer from a responsible and fully disclosed

purchaser and shall deliver immediately to MRTI a complete and accurate copy of such offer." (*Id.*

(emphasis added).)

---

[3] "Transaction Documents" are defined as "This Agreement, with exhibits and appendices, any
amendments or addenda thereto, any equipment leases or licenses, service agreements, software
licenses and equipment purchase agreements, the Dealer Sales Agreement (including, without
limitation, any related sales programs), any letter or incentive agreements between the parties and
any other agreement incorporating or incorporated into this Agreement between MRTI and its
Affiliates on the one hand and Franchisee and its Affiliates on the other hand." (MRTI Franchise
Agreement, § 1.01.) The MCSN defines it similarly, and also includes the "Retread Franchise
Agreement." (MCSN Franchise Agreement, § 1.01.)

55.     Under the MRTI Franchise Agreement, if presented with a ***bona fide*** offer,

>    MRTI has the option, exercisable by written notice delivered to
>    Franchisee within 30 days from the date of delivery of a complete
>    and accurate copy of such offer to MRTI, to purchase such interest
>    in the Transaction Documents, in the Franchisee, or in the Shop, for
>    the price and on the terms and conditions contained in such offer."

(MRTI Franchise Agreement, § 12.04 and MRTI Addendum, replacing second paragraph of §

12.04.) The MCSN Franchise Agreement is substantively identical but refers to a "Service Center"

instead of a "Shop." (MCSN Franchise Agreement, § 12.04 and MCSN Addendum, replacing

second paragraph of § 12.04.)

### Jack's Proposed Sale of Assets to a Competitor

56.     On December 11, 2023, Jack's presented MRTI with an Agreement and Bill of Sale

(the "ASA") between Jack's and Purchaser pursuant to which Jack's has agreed to sell to Purchaser

"***[a]ll of the assets which comprise the Acquired Business, except for the Excluded Assets.***"

(ASA Art. I (emphasis added).)

57.     The ASA specifically includes the real property, owned or leased, on which the

Shops and Service Centers are located, all fixed assets, furniture, fixtures, vehicles, equipment,

records and customer lists, agreements and contracts with customers, intellectual property, the use

of the Jack's Tire name, including all derivatives of the name, and the goodwill of the Acquired

Business. (ASA Art. I.)

58.     The ASA identifies the "Michelin Agreement" as an Excluded Asset, and it defines

that agreement as the "Addendum to Retread Franchise Agreement dated May 1, 2020." (ASA

Art. I (xii)(c). & Art. III.)

59. The ASA does not identify as an Excluded Asset, and thus purports to transfer, the MCSN Franchise Agreement to Purchaser.

60. The ASA grants Jack's a limited non-assignable two-year "license to use the name 'Jack's Tire' for the limited purpose of collecting retained receivables ... ***and winding up the business of Sellers***." (ASA Art. I (xii)(d) (emphasis added).)

61. In a letter accompanying the delivery of the ASA, Jack's noted that each of the MRTI Franchise Agreements "contains a Right of First Refusal (Section 12.04) with respect to certain assets of Jack's." Jack's stated that it was offering MRTI the opportunity to purchase the assets, "with the intent to satisfy any and all legal requirements of the Right of First Refusal ("ROFR"), if applicable." The letter further stated that "[n]otice is hereby given that Jack's has accepted the enclosed offer, including all terms and conditions thereof, subject to a Right of First Refusal, which may or may not be applicable to the transaction." Jack's demanded compliance with the 30-day requirement under Section 12.04 of the MRTI Franchise Agreement, purporting to require MRTI either to exercise or decline to exercise its ROFR for a transfer of the MRTI franchises.

### The Dispute

62. If the ASA is completed, Jack's will be nothing but an empty shell that is unable to perform any of its obligations under the MRTI and MCSN Franchise Agreements, even though it agreed to do so until May 1, 2030. Under the ASA, notwithstanding its obligations under the MRTI and MCSN Franchise Agreements, Jack's has specifically agreed to wind up its business no later than March 15, 2026.

63.    The ASA is a Transfer of the Franchise within the meaning of the MRTI and MCSN Franchise Agreements that is not conditioned on obtaining MRTI's prior written approval, and Jack's has failed to request MRTI's approval, notwithstanding its obligation to do so and the parties' agreement that any transfer made without such approval would be "void and of no force or effect."

64.    The ASA also is facially noncompliant with Section 12, including the agreed conditions for such franchise transfers. Most notably, the transferee, Purchaser, has not agreed to an assignment of the Franchise Agreements and has not agreed to upgrade the Shops.

65.    Purchaser is a retread franchisee of Bridgestone Bandag Tire Solutions ("Bandag"), a major competitor of MRTI in the tire retreading business. As such, Purchaser is a "Competitive Business," as defined by the MRTI and MCSN Franchise Agreements, which preclude Franchisees from "provide[ing] any service that competes with MRTI, including without limitation, selling, distributing, producing or delivering any product(s) or service(s) that compete with MRTI or that are provided by any Competitive Business." (MRTI Franchise Agreements, at §10.02; MCSN Franchise Agreement, at §10.02.) The Franchise Agreements thus preclude Purchaser from continuing the business of Jack's.

66.    Section 12 of the MRTI Franchise Agreements ensures that Jack's cannot avoid its obligations under those agreements through an asset sale or other transaction without MRTI's written approval that is contingent on meeting the agreed conditions, including the assignment of the Franchise Agreements to the transferee.

67.    Even if the ASA doesn't constitute a "Transfer of the Franchise" under Section 12 of the MRTI Franchise Agreements, by failing to exclude the MCSN Franchise Agreement and

thus purporting to transfer it to Purchaser, the ASA violates Section 10.02 of the MCSN Franchise Agreement.

68.     Jack's cannot use the ASA to force MRTI to exercise a ROFR to purchase the franchised businesses because the ASA is not a bona fide offer that meets the agreed-to conditions for a Transfer of a Franchise and violates the MCSN Franchise Agreement.

69.     The MRTI and MCSN Franchise Agreements provide that all disputes between the parties "are governed by and construed under the laws of the State of South Carolina, without regard to the application of South Carolina choice of law principles." (MRTI Franchise Agreements, § 16.01; MCSN Franchise Agreement, § 17.01.)

70.     The MRTI and MCSN Franchise Agreements provide that any actual or threatened violation of Section 10 or Section 12 constitutes irreparable injury to MRTI for which specific performance or injunctive relief shall be available without bond. (MRTI Franchise Agreements, § 16.04 and MCSN Franchise Agreement, § 17.04.)

71.     Jack's and its owners, as defined by the MRTI and MCSN Franchise Agreements, consented "to the issuance of an injunction at MRTI's request (without posting a bond or other security) prohibiting any conduct in violation of Sections 10 or 12. (MRTI Franchise Agreements, § 16.04 and MCSN Franchise Agreement, § 17.04.)

72.     The MRTI and MCSN Franchise Agreements provide that, if MRTI prevails in a claim regarding a breach of the Franchise Agreements or other Transaction Documents, MRTI "shall be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees." (MRTI Franchise Agreements, § 16.05 and MCSN Franchise Agreement, § 17.05, each as amended by the Addendum.)

73. The Dealer Agreement and the MRTI and MCSN Franchise Agreements all contain provisions that waive any right to a jury trial. (Dealer Agreement § 32; MRTI Franchise Agreements, § 16.06 and MCSN Franchise Agreement, § 17.06, each as amended by the Addendum.)

### COUNT I

**(Declaratory Judgment regarding the Terms of the
MRTI and MCSN Franchise Agreements and Injunctive Relief)**

74. MRTI incorporates by reference the allegations set forth in all prior paragraphs as if fully as set forth in length.

75. The ASA, if completed, would be a sale, assignment, or disposition of the assets of the Shops, Service Centers, Franchisee, Jack's Tire, and Jack's Investment and constitutes a sale of assets other than inventory in the ordinary course of business. The ASA is a Transfer of the Franchise as defined in the MRTI and MCSN Franchise Agreements. (MRTI Addendum § I ¶ 1; MCSN Addendum § I ¶ 1.)

76. Under the MRTI and MCSN Franchise Agreements, a Transfer of the Franchise requires the prior written approval of MRTI and compliance with Section 12's provisions. (MRTI and MCSN Franchise Agreements, § 12.01, each as amended by the Addendum.) "Any transfer without such approval or compliance [with § 12] constitutes a breach of this Agreement and is void and of no force or effect." (*Id.*)

77. The MRTI and MCSN Franchise Agreements require that Jack's make a written request for MRTI's prior written approval for its proposed Transfer of the Franchises. (MRTI Franchise Agreements, § 16.11; MCSN Franchise Agreement, § 17.11.)

78.    Jack's has not made a written request for MRTI's approval of the ASA. The ASA has not received, and isn't eligible to receive, written approval from MRTI, because it does not comply with the provisions of Section 12. Among other reasons, Purchaser has not agreed to take assignment of, and be bound by, all of the provisions of the Franchise Agreements and related documents. (MRTI and MCSN Franchise Agreements, § 12.02(d).) Purchaser is a "Competitive Business," as defined by the Franchise Agreements. As such, it is prohibited from acquiring the franchises from Jack's because the Franchise Agreements preclude franchisees from "provid[ing] any service that competes with MRTI." (MRTI Franchise Agreements, at §10.02; MCSN Franchise Agreement, at §10.02.)

79.    The ASA does not comply with Section 12 of the Franchise Agreements for the additional reason that Purchaser has not agreed to upgrade the Shops and receive the required MRTI training for certain Shop personnel. (MRTI Franchise Agreements, § 12.02(c).) It is impossible to meet this requirement because Jack's is retaining the MRTI Franchise Agreements but none of the existing Jack's MRTI Shops.

80.    The ASA, if completed, would be void and without force or effect. (MRTI and MCSN Franchise Agreements, § 12.01, each as amended by the Addendum.)

81.    Even if the ASA is not a "Transfer of the Franchise" under Section 12 of the MRTI Franchise Agreements, by failing to exclude the MCSN Franchise Agreement and thus purporting to transfer it to Purchaser, the ASA violates Section 10.02 of the MCSN Franchise Agreement.

82.    Even if the ASA is not a "Transfer of the Franchise" under Section 12 of the MRTI Franchise Agreements, by including the real estate and leases for the Shops and Service Centers as part of the Acquired Business, the ASA violates the MRTI and MCSN Franchise Agreements

that prohibit the MRTI Shops and Service Centers from being used during the term of the Franchise Agreements "for any purpose other than" MRTI Shops and Service Centers. (MRTI Franchise Agreements, at § 6.03; MCSN Franchise Agreement, at § 6.04.)

83.     There is an existing and actual legal controversy regarding (a) whether the MRTI and MCSN Franchise Agreements require Jack's to make a written request for, and obtain, MRTI's written approval of the ASA, and (b) whether the ASA must comply with the conditions of Section 12 of the Franchise Agreements. (*See* MRTI and MCSN Franchise Agreements, § 12.01, each as amended by the Addendum.) This controversy can be effectively resolved with a declaratory judgment regarding the parties' rights and obligations under the MRTI and MCSN Franchise Agreements.

84.     There is an existing and actual legal controversy regarding whether consummation of the ASA without MRTI's written approval and without complying with the conditions of Section 12 is void and without force or effect. (MRTI and MCSN Franchise Agreements, § 12.01, each as amended by the Addendum.) This controversy can be effectively resolved with a declaratory judgment regarding the requirements of the MRTI and MCSN Franchise Agreements.

85.     There is an existing and actual legal controversy regarding whether the ASA violates Section 10.02 of the MCSN Franchise Agreement. This controversy can be effectively resolved with a declaratory judgment regarding the requirements of the MCSN Franchise Agreement.

86.     There is an existing and actual legal controversy regarding whether, by including the real estate and leases for the Shops and Service Centers as part of the Acquired Business, the ASA violates the MRTI and MCSN Franchise Agreements that prohibit the MRTI Shops and Service Centers from being used during the term of the Franchise Agreements "for any purpose other than"

MRTI Shops and Service Centers. (MRTI Franchise Agreements, at § 6.03; MCSN Franchise Agreement, at § 6.04.) This controversy can be effectively resolved with a declaratory judgment regarding the requirements of the MRTI and MCSN Franchise Agreements.

87.     Jack's delivered a letter on December 11, 2023, indicating that the ASA would close after January 11, 2024 if MRTI failed to exercise its ROFR. And pursuant to the terms of the ASA, the closing between Jack's and Purchaser is scheduled to take place 45 days "after the termination of [MRTI's] under any [MRTI] ROFR." (ASA § 3.1.) Under the MRTI and MCSN Franchise Agreements, the ROFR springs from, and is triggered by, the presentation of a "bona fide" offer to MRTI. An offer that does not comply with Section 12 of the Franchise Agreements, that doesn't request or purport to require MRTI's written approval, and that violates Section 10.02 of the MCSN Franchise Agreement, is void and without force or effect; it does not and cannot constitute a complete and bona fide offer.

88.     Because MRTI has not been presented with a bona fide offer within the meaning of the MRTI and MCSN Franchise Agreements, MRTI's ROFR has not been triggered, and MRTI has no contractual obligation to exercise a ROFR on or before January 11, 2024.

89.     There is therefore an additional existing and actual legal controversy that can be effectively resolved by a declaratory judgment regarding whether the delivery of the ASA on December 11, 2023, constitutes a bona fide offer that triggers the ROFR under the MRTI Franchise and MCSN Franchise Agreements. This existing and actual legal controversy can be effectively resolved by a declaratory judgment regarding the parties' rights and obligations under the MRTI and MCSN Franchise Agreements.

90.     As further relief, MRTI seeks a temporary restraining order to preserve the status quo pending the Court's decision on MRTI's request for a preliminary injunction to preserve the status quo pending the Court's decision on the declaratory judgments pursuant to Fed. R. Civ. P. 65. MRTI also seeks a permanent injunction enforcing the declaratory judgments pursuant to 28 U.S.C. § 2202 by requiring Jack's, its owners and affiliates, as well as any other parties acting through or in concert with Jack's, to comply with the MRTI and MCSN Franchise Agreements consistent with the Court's declarations.

91.     MRTI is entitled to a temporary restraining order and preliminary injunction because (1) it is likely to succeed on the merits of its declaratory judgment claim; (2) the harm to MRTI's future customer sales, business reputation, brand, and goodwill constitutes an imminent threat of irreparable harm; (3) the balance of equities favors injunctive relief because MRTI will be irreparably harmed, while requiring Jack's to perform its contractual obligations during the pendency of these proceedings will not harm Jack's; and (4) the public interest in enforcing contracts favors injunctive relief.

92.     Pursuant to the MRTI and MCSN Franchise Agreements, Jack's and each of its owners agreed that an actual or threatened violation of Section 10 or Section 12 would result in irreparable injury to MRTI for which no adequate remedy at law exists. (MRTI Franchise Agreements, at § 16.04; MCSN Franchise Agreement, at § 17.04.)

93.     Jack's and each of its owners further consented "to the issuance of an injunction at MRTI's request (without posting a bond or other security) prohibiting any conduct in violation of" Section 10 or Section 12. (MRTI Franchise Agreements, at § 16.04; MCSN Franchise Agreement, at § 17.04.)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MRTI respectfully asks the Court to grant the following relief:

a.     A declaration that the ASA constitutes a Transfer of the Franchise within the meaning of the MRTI and MCSN Franchise Agreements;

b.     A declaration that the ASA cannot be consummated unless Jack's makes a written request of MRTI for written approval of the ASA, obtains MRTI's written approval, and complies with all provisions of Section 12 of the Franchise Agreements;

c.     A declaration that any attempt by Jack's to complete the ASA without MRTI's written approval and/or without complying with Section 12 of the Franchise Agreements is void and without force or effect;

d.     A declaration that Jack's December 11, 2023 delivery of the ASA is not a complete and bona fide offer that triggers the ROFR under the MRTI and MCSN Franchisee Agreements because it does not comply with Section 12 of the Franchise Agreements, violates Section 6.03 of the MRTI Franchise Agreements and Section 6.04 of the MCSN Franchise Agreement, and violates Section 10.02 of the MCSN Franchise Agreement;

e.     A temporary restraining order preserving the status quo by ordering that the ASA cannot be completed pending the Court's decision on MRTI's motion for a preliminary injunction;

f.     A preliminary injunction preserving the status quo by ordering that the ASA cannot be completed pending the Court's decision on MRTI's claim for declaratory judgment;

g.     A permanent injunction enforcing the declaratory judgments by requiring Jack's, its owners and affiliates, as well as any other parties acting through or in concert with Jack's, to comply with the MRTI and MCSN Franchise Agreements consistent with the Court's declarations;

h. For an award of all reasonable attorneys' fees to the extent such may be allowable by law or under the MRTI and MCSN Franchise Agreements;

i. For an award of allowable costs and expenses; and,

j. For such other and further relief as the Court deems just and proper.

Dated: January 2, 2024

Respectfully submitted,

*s/Lindsay L. Builder*

David E. Dukes
Federal Bar No. 635
Lindsay L. Builder
Federal Bar No. 11836
Michael P. Moran
Federal Bar No. 13780
NELSON MULLINS RILEY &
SCARBOROUGH LLP
2 W. Washington Street, Suite 400
Greenville, SC 29601
Telephone:     864.373.2300
Facsimile:     864.373.2925
Email: david.dukes@nelsonmullins.com
            lindsay.builder@nelsonmullins.com
            michael.moran@nelsonmullins.com

Peter W. Herzog III (*pro hac vice application to be filed*)
WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Telephone:     314.326.4129
Facsimile:     303.244.1879
Email: pherzog@wtotrial.com

*Attorneys for Plaintiff Michelin Retread Technologies, Inc.*

## VERIFICATION

The undersigned deposes and states that I have read the foregoing Verified Complaint and hereby certify based upon my personal knowledge under penalty of perjury that the factual allegations contained therein are true and accurate, and that any other allegations are believed to be true and accurate.

Signed under penalties of perjury.

Date: January 2ND, 2024

_____
Peter G. Dunphy
President
Michelin Retread Technologies, Inc.