# EXHIBIT 1 TO DECLARATION OF LINDSAY L. BUILDER

Agreement #: 1757.1

# MICHELIN NORTH AMERICA , INC
# AUTHORIZED COMMERCIAL CUSTOMER AGREEMENT
(For Products)

This Michelin North America, Inc. Authorized Commercial Customer Agreement ("Agreement"), which includes all Appendices and Exhibits hereto, is entered into by and between Michelin North America, Inc., a New York corporation, having its principal place of business at One Parkway South, Greenville, SC 29615, and its successors or assigns ("MNA"),and individual as defined below as Customer ("Customer").  In consideration of all mutual promises herein, and subject to the terms set forth below, MNA and Customer agree as follows (the "Sales Terms"):

**PRODUCTS AND CUSTOMER LOCATIONS:** Pursuant to this Agreement, Customer is authorized by MNA to promote, market, sell and service certain MICHELIN®, BFGOODRICH®, UNIROYAL® and/or Kleber® brand tires manufactured by MNA ("MNA Brand(s)") selected by MNA and listed in Customer's Profile, as the same may be amended from time to time ("MNA Product(s)"). Customer is authorized to promote, market, sell and service these MNA Products from authorized Customer locations, as maintained by MNA, for ultimate consumers or end users within the fifty United States and the District of Columbia  ("Authorized Area").  MNA, in its absolute discretion, may agree to add or delete "bill-to" or "ship-to" locations proposed by Customer.  Customer (i) shall not sell or purchase MNA Products, directly or indirectly, outside of the Authorized Area and (ii) shall not, directly or indirectly, sell, transfer, buy, import, or export MNA Products outside of the Authorized Area and understands that such sales will be a breach of this Agreement.  MNA, in its absolute discretion, may prohibit Customer from purchasing specific MNA Product(s) at any time for any reason.  If Customer is designated a Michelin Associate Dealer in Customer's Profile, additional terms and conditions apply as detailed in **Exhibit A**.

**TERM:** The Sales Terms and all Appendices shall have an effective date to commence on the date the agreement is completely executed or the date of the last signatory, whichever occurs first  (the "Effective Date") for a term of three (3) years or until terminated by either party pursuant to the General Conditions for the Sale and Purchase of Tires set forth on **Exhibit A** (the "Term").  Acceptance of this Agreement, including the general terms and conditions listed on **Exhibit A**, by Customer is evidenced by (1) execution of this Agreement, (2) acceptance of a delivery of MNA Products, or (3) payment of an MNA invoice, whichever occurs first.  MNA in its absolute discretion will determine whether to issue an agreement beyond the Term.

**ENTIRE AGREEMENT:** This Agreement, which includes the Sales Terms, all Exhibits and Appendices, as well as other documents and policies referred to herein, constitutes the entire agreement between Customer and MNA with regards to the subject matter hereof.  This Agreement supersedes all prior oral and written communications, agreements, and understandings of the parties, if any.  In the event of conflicting terms between the Exhibits and Appendices, the Exhibits and Appendices shall take precedence.  The terms and conditions of the Sales Terms may be changed only by a written instrument signed by the duly authorized officers or representatives of the parties.  The terms and conditions of all Exhibits and Appendices hereto can be changed by MNA, in MNA's absolute discretion during the Term of this Agreement, by notice to Customer.  Any updates to the Exhibits shall be posted through Michelin's online portal. The parties agree that this Agreement is intended to be a legally binding document and shall be interpreted as creating one or more legal obligations between the parties, as specified herein.

**SALES/BRAND PROGRAMS:** Acceptance of this Agreement is a condition precedent to Customer's participation in any MNA sales or brand programs, established, modified or discontinued from time to time by MNA's respective sales divisions ("Brand Programs"). The foregoing also applies to Associate Dealers to the extent Associate Dealer is eligible. Such Brand Program may be modified or discontinued in MNA's sole discretion during the Term. Customer's BDF Marketing Plan for MNA Brands will be updated annually during the first calendar quarter. The plan will be maintained by MNA via Michelin's online portal.

**OTHER PROGRAMS:** Customer agrees to support and participate applicable MNA Lease Management/National Account/Government Fleet Sales/Public Utility/Military Exchange/Rent-a-Car and Car Dealer programs according to the terms and conditions set forth in **Exhibit A.** From time to time, MNA may offer products on

Agreement #: 1757.1

|  |  |
|---|---|
|  | a temporary sales program that features temporary pricing significantly lower than the standard program (e.g., overstock, downstream, or discontinued products).Customer assumes sole responsibility to assess the potential financial impact of purchasing/selling such products, and MNA will reject any and all claims from Customer relating to alleged negative financial consequences attributed to the purchase/sale of these products. |
| **MNA SIGNAGE:** | Upon MNA approval, MNA shall lease to Customer, and Customer shall lease from MNA, any MICHELIN®, BFGOODRICH® and/or UNIROYAL® brand signs ("Sign(s)") currently or previously made available to Customer by MNA.  It is in the sole discretion of Customer to lease such Sign(s).  If Customer leases Sign(s) from MNA, Customer shall comply with all applicable terms and conditions regarding such lease as detailed in MNA's Sign Lease Agreement. |
| **MNA POLICIES:** | Customer agrees to abide by all applicable and then current Michelin policies, including, but not limited to, MNA's Return Goods Policy, Transportation Policy, and Internet Sales and Internet Promotion Policy.  MNA policies are contained in applicable MNA sales or brand programs, available through Michelin's online portal, and/or available upon request. MNA may update these policies at any time and for any reason without notice to Customer. |
| **CUSTOMER WARRANTIES:** | Customer represents and warrants to MNA that: (i) the individual executing this Agreement on behalf of Customer is lawfully able to enter into contracts or agreements on behalf of Customer and has the legal authority to bind Customer to the terms and conditions hereof and (ii) neither the making nor performance of this Agreement will conflict with, result in breach of, or constitute a default under any other agreement of Customer. |
| **APPENDICES AND EXHIBITS:** | The Appendices and Exhibits below, and all other exhibits, attachments, schedules, programs/plans/goals, and policies referred to in this Agreement, are incorporated by reference and form the Agreement as defined above. |

        **Exhibit A**        **General Terms and Conditions for the Sale and Purchase of Tires**

Each party acknowledges that they wish to enter into this Agreement by electronic means, and that their electronic signature has the same force and effect as their written signature.  This Agreement may be executed by counterparts (including by facsimile or .pdf file), each of which shall be deemed an original but all of which taken together will constitute one and the same instrument. This Agreement has been executed by the parties' duly authorized representatives on this ("Effective Date").

| Michelin North America, Inc. | | JACK'S TIRE & OIL MANAGEMENT COMPANY Dealer | |
|---|---|---|---|
| By: | *Mike Gasparovic* (Sep 1, 2021 14:56 EDT) | By: | *Robert J. Feldbauer Jr* (Feb 1, 2021 10:25 MST) |
| Name: | Mike Gasparovic | Name: | Robert J. Feldbauer Jr |
| Title: | AMN Contract Manager | Title: | President/CEO |
| Date: | Sep 1, 2021 | Date: | Feb 1, 2021 |

Agreement #: 1757.1

**EXHIBIT A**
**GENERAL TERMS AND CONDITIONS FOR THE SALE AND PURCHASE OF TIRES**

The following General Terms and Conditions for the Sale and Purchase of Tires shall apply to this Agreement between MNA and Customer:

1) **CUSTOMER'S RIGHT TO PURCHASE MNA PRODUCTS**. MNA agrees to sell to Customer, on a non-exclusive basis, and Customer agrees to purchase from MNA on a non-exclusive basis, MNA Products for the sale of such MNA Products in the Authorized Area during the term of this Agreement, solely in accordance with the terms and conditions of this Agreement and the credit terms, if any, and payment terms prescribed by MNA in its sole discretion.

MNA, for itself and on behalf of its affiliates, retains all rights and discretion with respect to MNA Products, MNA Brand(s) and Marks (as defined below)., including without limitation the right to offer and sell to any party any MNA Products or other products and services identified by the MNA Brands or Marks or other service marks, including new tires, repaired tires, retreaded tires, used tire casings and, tire repair services, at any location anywhere in the world including the vicinity or market area of Customer's location(s).

2) **COMMITMENT OF MNA TO SUPPORT CUSTOMER**. MNA will support and assist Customer in promoting, marketing, selling and promoting, marketing, selling and servicing MNA Products.

3) **CUSTOMER'S COMMITMENT TO MNA**. MNA requires, and Customer agrees, that Customer will conduct its business in a manner that will maximize the sale of MNA Products by Customer while enhancing the reputation of and goodwill associated with MNA Brands and MNA Products. Customer shall:

   A. Recommend and promote the retail sale of MNA Products. Explain the value of MNA Products in order to convert non-MNA users to MNA Products.

   B. Not, without the prior written approval of MNA directly or indirectly without the prior written approval of MNA, directly or indirectly sell, transfer or otherwise supply MNA Products to another tire manufacturer or retread franchisor or licensor, or to any distribution or retail facility owned or controlled, in whole or in part, by another tire manufacturer or retread franchisor or licensor.

   C. Not sell or install Unsafe Used Tires. "Unsafe Used Tire" means a used tire which:
      i. Is worn to two-thirty-seconds of an inch tread depth or less (for passenger and light truck tires) or is worn to four-thirty-seconds of an inch tread depth or less (for medium truck tires) on any area of the tread;
      ii. Has any damage exposing the reinforcing plies of the tire, including cuts, cracks, punctures, scrapes, or wear;
      iii. Has an improper repair, which includes any repair to the tire in the tread shoulder or belt edge area; a puncture that has not been both sealed with a patch on the inside and repaired with a cured rubber stem plugging that runs to the outside; a repair to the sidewall or bead area of the tire; or a puncture repair of damage that is larger than one quarter of an inch in size;
      iv. Shows evidence of prior use of a temporary tire sealant without evidence of a subsequent proper repair;
      v. Has a defaced or removed United States department of transportation tire identification number;
      vi. Is a recalled tire whose sale is prohibited under federal law;
      vii. Has any inner liner damage or bead damage; or
      viii. There is indication of internal separation, such as bulges or local areas of irregular tread wear indicating possible tread or belt separation. Not sell or install unsafe tires. An "unsafe tire" in the motorsports context means a non-DOT tire which shows clear signs of aging or wear (cracks in the rubber of the tread, shoulder or lower zone sidewall, deformation, etc.)

   Unsafe Used Tires should be rendered unusable and disposed of properly.

   D. Participate in and actively promote MNA recall campaigns. This means: (1) responding promptly to MNA's request for consumer information; (2) complying with all MNA recall requirements (e.g. sending consumer addresses to MNA, removing recalled tires from inventory). Recalled tires should be rendered unusable and disposed of properly, in accordance with MNA's recall instructions. An up-to-date list of MNA recalled tires is at [www.michelinb2b.com](www.michelinb2b.com).

   E. Participate in and actively promote all third-party arrangements or rebill accounts, including, but not limited to, MNA's National Account Program (also referred to as North American Fleet Account Program) for public utilities, fleet accounts, original equipment dealers, government and military sales., a copy of which program is available upon request and may be updated by MNA from time to time at MNA's sole discretion. Customer agrees to maintain all files and records, including delivery receipts and all other documents sufficient to establish delivery of MNA Products and/or services in accordance with MNA's National Account Program. Customer agrees to maintain such records for a period of not less than seven (7) years from the date of creation of each such record. Customer agrees to comply with all other terms and conditions of the North American Fleet Account Program, including, but not limited to, the North American Fleet Account Directory as it may be amended from time to time by MNA. In addition, to the extent Customer participates in MNA's National Account Program in exchange for a set reimbursement or commission from MNA, Customer agrees it will not utilize any portion of such reimbursement or commission as a "rebate" to the national account fleet for inducement in attracting national account business.

   F. Service MNA consumers/users who present an MNA tire with a warrantable condition in accordance with the applicable MNA Limited Warranties. As with all consumer interactions, Customer should handle warranty claims in

Agreement #: 1757.1

a polite and professional manner. All new MNA Products purchased from MNA bearing the Marks, as defined in **INTELLECTUAL PROPERTY AND INFRINGEMENT INDEMNIFICATION** section below, are warranted in accordance with the provisions of the applicable MNA Limited Warranties. MNA Limited Warranties are available at Michelinb2b.com. Customer shall provide all applicable MNA warranties and safety information to its customers, and honor MNA Limited Warranties regardless of whether or not the warranty holder is a current customer. Customer accepts full responsibility for the validity and authenticity of Customer's portion of all adjustment forms submitted. With respect to MNA Products, Customer shall make no guarantee, warranty or representation to Customer's current customers or prospective customers on behalf of MNA or any other manufacturer supplying MNA, and instead, Customer shall refer current customers and prospective customers to applicable MNA Limited Warranties. Should Customer offer its own road hazard or other warranty to its customers, Customer shall not submit such claims to MNA for adjustment credits. All claims submitted to the Customer under the applicable MNA Limited Warranty shall be processed in accordance with the procedures established by MNA. Customer agrees to abide strictly by the terms of the MNA Warranty Claim Procedure Manual, as the same may be updated by MNA from time to time. If the MNA Product was involved in an accident, and Customer is aware of the accident, Customer shall promptly notify the local MNA Commercial Representative. In the event that MNA desires to inspect any such MNA Products in Customer's possession, Customer shall arrange for their transportation to and as directed by MNA at the expense of MNA in accordance with its instructions.

G. Establish and maintain its Locations in a clean, neat, orderly and safe manner. Customer shall at all times conduct its business and provide every user of MNA Products (whether or not a current customer of Customer), both at the time of sale and thereafter on demand by any user, with tire service meeting the highest service standards of the trade, both in terms of courtesy and convenience to user and of technical competence of service.

H. Ensure that its Locations are, at all times, adequately staffed with suitably trained personnel and equipped with the tools, equipment and machines necessary to sell and service MNA Products in a professional manner. Customer must complete MNA prescribed training.

I. Render unusable all tires that are being properly disposed of or sold for proper disposal.

J. Identify its Locations as MNA Brand dealerships by prominently displaying and properly maintaining MNA Brand signage and other MNA Product identification, as applicable.

K. Not publish, advertise or disseminate any information that MNA determines to be deceptive, misleading, inaccurate or untrue concerning MNA Brands, MNA Products or MNA customers, and not engage in any deceptive or unethical practice with respect to such matters.

L. Maintain an adequate inventory or access to inventory of MNA Products at all times (subject to MNA's ability and agreement to supply such MNA Products) in order to promptly meet anticipated local market demand for MNA Products. Customer also agrees to support applicable MNA Brand original equipment fitments by maintaining an adequate stock of such sizes. MNA, from time to time, shall advise Customer of the applicable sizes and minimum stock requirements for original equipment fitments as a recommendation to assist Customer in fulfilling inventory obligations. Customer remains free to ultimately determine its inventory requirements. Customer shall not fill orders or provide services that are not in strict compliance with original equipment manufacturers' and MNA's fitment guides specifications, safety and technical information. Customer shall provide full and appropriate service information (e.g., inflation, tire care and maintenance and safety information) to the customer.

M. Promptly provide MNA with accounting records which accurately reflect the financial condition of Customer's business, as MNA may request, in order for MNA to satisfy itself as to the security of any outstanding obligations of Customer to MNA.

N. For direct dealers only, maintain an insurance policy naming MNA as a loss-payee and covering: (1) the MNA Products tendered to Customer in an amounts owed to MNA adequate to compensate MNA in full for any loss or damage to MNA Products not previously paid for in full by Customer and (2) services provided by Customer as requested by MNA, and in any event in amounts not less than those which are customary within the business in which Customer operates. The insurance policy must be provided to MNA upon request.

4) **ORDERS**. Customer shall submit orders for MNA Products to MNA Customer Service. MNA, in its absolute discretion, shall allocate available MNA Products between and among original equipment manufacturers and other MNA customers. MNA may accept orders in its sole discretion. Once an order is accepted, MNA shall use reasonable efforts to fill orders of Customer. However, MNA shall not be liable for any losses or costs incurred by Customer resulting, directly or indirectly, from failure or delay in shipment of MNA Products due, in whole or in part, to:

    A. shortage of MNA Products or materials;

    B. interruption of transportation or utility facilities; or

    C. any other cause beyond MNA's reasonable control or without the fault or negligence of MNA.

Customer may also submit to MNA request(s) for quotation to support Customer bids to end users, including governmental entities. MNA, in its absolute discretion, shall determine which bid(s), if any, will be supported by MNA.

5) **PAYMENT TERMS.**

    A. Customer shall pay for MNA Products in accordance with MNA's invoice to Customer, or in such other manner as

Agreement #: 1757.1

MNA may prescribe in its sole discretion. Customer's failure to make full payment in accordance with the terms of any invoice will constitute a material breach of this Agreement. In the event Customer is delinquent in payment, MNA shall have the right, without limitation on any other remedy otherwise available to it, to refuse shipment of any further MNA Products to Customer. If Customer disputes any MNA invoice, pursuant to MNA's claims policy, it shall notify MNA of any disputes/claims within thirty (30) days of invoice date or credit document date and shall pay MNA the balance due on the portion of the invoice that Customer does not dispute in accordance with the terms of the invoice.

Notwithstanding anything to the contrary herein, MNA shall have the right in its sole discretion at all times to (i) establish and make modifications to payment terms; (ii) grant or discontinue any extenion of open account trade credit to Customer; and to (iii) require cash advance or other security for shipments.

B.  Notwithstanding any stipulation by Customer to the contrary, MNA shall have the right to apply any payments made by Customer or credits issued to Customer as MNA shall determine in its absolute discretion.

C.  Without limiting any remedy available to MNA, and upon MNA's request, if Customer does not pay for MNA Products in accordance with this Agreement or any MNA Dealer Programs, Customer shall immediately, at its sole expense, return all MNA Products.

D.  MNA may demand assurances from Customer that payment in conformity with the provisions of this Agreement shall be forthcoming. Until assurances satisfactory to MNA are received from Customer, MNA shall have the right to discontinue or suspend Customer's privileges under this Agreement. In addition to any right of setoff or recoupment provided by law, MNA, in its sole and absolute discretion, shall have the contractural right to apply any amounts owed by MNA or any affiliate of MNA (including but not limited to credits, bonuses or rebates earned or payable under any Brand Programs) to Customer (or any person or entity affiliated with Customer) to reduce any amounts due MNA.   In the event of Customer's bankruptcy, or Customer's customers, any unprocessed delivery receipts must be submitted to MNA within 10 business days of said bankruptcy filing to obtain credit for those delivery receipts.

E.  All sums not paid by Customer when due shall bear interest, to be paid by Customer to MNA, from the due date at the maximum lawful rate or twenty-four percent (24%) per annum (whichever is lower) as of the due date in the province or state where Customer has its principal place of business.

F.  Customer shall reimburse MNA for all charges and costs, including, but not limited to, reasonable attorneys' fees, which MNA incurs in enforcing this Agreement, the Brand Programs or any related agreement including, but not limited to, any security or credit agreement.

6)  **PRICING**.

A.  The prices payable by Customer are provided in the applicable Brand Program(s) in effect at the time of shipment. To the extent that any taxes are not included in such price, Customer also shall be liable to reimburse MNA for all applicable taxes on the manufacture, distribution, ownership, and use of any MNA Products purchased by Customer.

B.  MNA may change at any time, without prior notice to Customer, the prices of MNA Products, MNA price lists, and other pricing or sales materials distributed by MNA..

C.  MNA shall independently determine the prices of MNA Products payable by Customer to MNA. Customer shall independently determine the prices at which it will resell MNA Products. Any suggested resale prices by MNA are merely suggestions.

7)  **DELIVERY**. MNA shall designate the points from which MNA Products are shipped to Customer. In all instances, including when freight is prepaid, MNA retains the right to select the carrier/delivery agent. MNA shall ship MNA Products only to authorized Customer locations. Customer's signing of a delivery receipt document will acknowledge delivery of MNA Products in good condition and without damage caused by delivery, but such acknowledgment will not prejudice Customer's ability to claim breach of any warranty or guarantee given under this Agreement. Customer may, at its sole expense, pick up any order of MNA Products from such warehouse as MNA may designate and at such times as the parties mutually agree.

If Customer is a Truck Associate Dealer, the above shall apply, except to the extent that delivery of MNA Products to Truck Associate Dealer shall be solely through its authorized Truck Associate Dealer Distributor.

8)  **TITLE AND RISK OF LOSS**. Title and risk of loss or damage to MNA Products purchased by Customer shall remain with MNA until such MNA Products are tendered to Customer at which time title and risk of loss or damage shall pass to Customer. Tender shall take place when MNA Products are delivered to a carrier for transportation to Customer or are in the possession or control of Customer, whichever occurs first. For Truck Associate Dealers, tender occurs when MNA Products are delivered to a carrier or Truck Associate Dealer Distributor or are in the possession of Truck Associate Dealer, whichever occurs first. Notwithstanding the passage of title, the transfer of the MNA Products to a carrier, or other terms of delivery, MNA retains the right to stop delivery of MNA Products in the event Customer fails to pay any sum payable to MNA under any order or defaults in its performance of any other obligation of Customer, the insolvency of Customer, and as otherwise provided in applicable law.

9)  **RETURNS.** Customer agrees not to return for exchange or credit any MNA Product delivered hereunder without MNA's written approval pursuant to the MNA Return Goods Policy. Associate Dealers must follow applicable procedures to return through its authorized Associate Dealer Distributor.

10)  **SECURITY INTEREST.** Until payment in full is received by MNA for all MNA Products sold directly to Customer, MNA shall retain a security interest and Customer hereby grants and conveys a security interest to MNA, in such MNA Products, which includes all inventory now owned or hereafter acquired by Customer, which bears the MNA Brand name of any products owned, manufactured, sold or used by MNA or any of its subsidiaries, affiliates, successors or assigns, now or in the future, together with all increases, substitutions, replacements, additions and accessions to any of the foregoing; all accounts, accounts receivable,

Agreement #: 1757.1

contract rights, chattel paper, instruments, general intangibles, and receivables of any kind arising from or related to any of the foregoing; Customer's books and records concerning any of the foregoing; and all proceeds of any of the foregoing. Customer shall, upon request, execute and deliver to MNA a written Security Agreement(s) sufficient to set forth in further detail this security interest. Customer also shall execute or authenticate and irrevocably authorizes MNA to file any financing or continuation statements and amend them under applicable law, and any further documentation deemed necessary by MNA, all in a form satisfactory to MNA, to establish, maintain, and perfect such security interest. At MNA's request, Customer agrees to sign all other documents that are necessary to perfect, protect, and continue MNA's security interest in MNA Products.  Prior to receipt by MNA of final payment in full in indefeasible funds from Customer for all MNA Products tendered to Customer by MNA, Customer shall have no right to sell or dispose of such MNA Products except in the ordinary course of Customer's business.

11) **TAXES AND LICENSES.**  Customer represents, warrants and certifies that MNA Products purchased from MNA are for resale in the ordinary course of Customer's business, and that Customer is required to collect sales or use taxes and waste tire fees and incurred in any such resale transactions. Customer agrees to furnish proof thereof to MNA.  As to any MNA Products or other tangible property put to a taxable use by Customer and any item previously exempted from a tax or fee in lieu of or prior to resale. Customer shall make timely return and payment to the proper taxing authority of all applicable taxes to include waste tire fees and Customer shall notify MNA of such use and pay MNA any FET on products previously exempted in a taxable use. Customer shall indemnify and hold MNA harmless from any and all claims, demands, fees and fines (including, but not limited to, MNA's legal fees associated therewith) arising from or created by Customer's failure to promptly pay any sales, excise, income or other tax, or from Customer's failure to correctly file any required tax returns.

For any exempt purchases from MNA, Customer agrees to provide the appropriate certificates of exemption to MNA.  If, as a result of a federal, state or local,  audit, it is determined that Customer is not entitled to exemption and MNA is assessed the tax or fee, MNA reserves the right to charge any assessed taxes and fees to Customer. Customer hereby agrees to pay such taxes, fees, fines and any legal fees incurred by MNA as a result of Customer's denied exemption.

MNA grants tax exemptions from the date Customer's exemption documents are approved by MNA's Tax Department until the exemption expires, or MNA's Tax Department determines that new exemption documents are required from the customer. For disputed tax invoices, MNA will research and grant tax exemptions up to thirty (30) days following the due date of an invoice.

12) **TRADEMARKS AND TRADE NAMES**.  MNA retains the right to and ownership of the trademarks, logos, domain names, metatags, and trade names (collectively, the "Marks") applicable to its businesses, its operations, its facilities and MNA Products. MNA hereby grants Customer the non-exclusive, non-transferable, limited right during the term of this Agreement to use such Marks in Customer's business solely for the purpose of advertising and promoting the sale and use of MNA Products. Customer acknowledges that MNA retains the right to and ownership of such Marks, which Customer agrees not to contest or impair in any way. Customer also agrees to use such Marks only as authorized by MNA. Customer is not authorized to use such Marks as a part of Customer's corporate name. Unless specifically authorized in writing by MNA, Customer shall not use the Marks in connection with the sale of any private or associated brand tires or any other tire not covered by that specific trade name or trademark.  Any misuse of the Marks by Customer shall constitute a material breach of this Agreement, and Customer agrees to indemnify MNA for any and all damages caused by Customer's breach of the MNA terms of use to its Marks. Further, Customer agrees to allow MNA to review and approve any and all advertising, marketing, and/or promotional materials which include or make any use of its Marks upon MNA request.

13) **PROPRIETARY RIGHTS**.  MNA may monitor Customer's use and sale of MNA Products and services, and Customer expressly agrees that MNA may collect information related to Customer's use and sale of MNA Products and services ("Customer's Data").

In addition, MNA may use Customer's Data in an aggregate and anonymous manner, including to compile statistical and performance information related to the provision and operation of MNA Products and services ("aggregated statistics").  MNA at all times retains the rights to and ownership of the aggregated statistics, and all intellectual property rights therein belong to and are retained solely by MNA.

Customer acknowledges that MNA will be compiling aggregated statistics based on Customer's Data and information input by other parties into the MNA Products and services and Customer agrees that MNA may (a) make such aggregated statistics publicly available, and (b) use such information to the extent and in the manner required by applicable law or regulation and for purposes of data gathering, analysis, service enhancement and marketing, provided that such data and information does not identify Customer or its confidential information.

14) **INTELLECTUAL PROPERTY AND INFRINGEMENT INDEMNIFICATION**.  MNA at all times retains the rights to and ownership of its intellectual property and other proprietary information.  MNA will indemnify and hold harmless Customer, its parent, affiliated and subsidiary companies and any of their successors and assigns ("Indemnitees") against any judgment and/or settlement that results from any claim, action or suit brought by a third party who alleges infringement of its patents, trademarks, copyrights or other corresponding rights by reason of the sale or use of the Products subject to this Agreement, and MNA will at its expense be solely responsible for defending Indemnitees against all such claims, actions and suits.  If the Products are subject to an injunction, MNA will at its expense choose either to obtain for Indemnitees the right to continue to use the Products or to replace or modify the Products to make them non-infringing while still having at least equivalent capability or to refund the cost of the Product less reasonable usage.  MNA's entire liability and Customer's exclusive and sole remedy with respect to any such claims, actions or suits is limited to those enumerated in this Section and any and all other remedies are explicitly excluded including, but not limited to consequential damages, special damages and business interruption expenses.

15) **CONFIDENTIALITY.**  MNA and Customer both acknowledge that all transactions in furtherance of this Agreement, and the terms of this and any other agreements with MNA, including pricing, specifications, and any other competitive commercial, technical or business data or information, are confidential and proprietary.  Customer agrees to take all reasonable steps necessary to prevent disclosure to any third party, and further agrees to notify MNA in writing via certified mail within ten (10) business days of the receipt of any request from a third party to disclose said confidential information.  The parties shall not publicly announce, advertise, or disclose the existence of their relationship, this Agreement or its terms and conditions, without the prior written consent of the other party.  In MNA's sole discretion, MNA may request Customer to enter into a separate confidentiality and non-use agreement.

16) **MNA REPRESENTATIONS AND WARRANTIES**. MNA may provide Customer with materials from time to time to aid Customer in its

Agreement #: 1757.1

sale of MNA Products (e.g., primary and secondary consumer marketing data collected or prepared by MNA, purchase recommendations, and/or business practice training).  MNA is providing these materials AS IS, and cannot and does not warrant or guarantee the accuracy of any such information. Such information is provided for informational purposes and to aid Customer in making its own unilateral business decisions. The provision of such information is not intended to be, and should not be construed by the Customer as, an instruction or directive to take any specific course of conduct based on the information.

All Products bearing trademarks of MNA are warranted in accordance with the provisions of the written Limited Warranty and Owner's Manual applicable to such Products, as may be amended from time to time by MNA.  EXCEPT AS EXPRESSLY STATED IN THE MNA LIMITED WARRANTIES, MNA HEREBY DISCLAIMS **ALL OTHER WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY.**

17) **INDEMNIFICATION BY MNA**.  MNA agrees, subject to the provisions below, to defend and indemnify Customer and hold it and/or its agents and employees harmless from any alleged third-party claim, demand, loss, judgment, expense, cost, damage, or injury, including reasonable attorneys' fees, defended by MNA and/or any settlement approved by MNA, which arises out of injury or damage to any person or property, real or personal, proximately caused by defects in workmanship or materials in any MNA Product manufactured by MNA and sold to Customer under this Agreement.

Upon determining that its MNA Product was involved, MNA may defend, at its own cost, expense and risk, any and all actions, suits, and other legal proceedings that may be brought or instituted upon any claim or demand that injury or damages are caused by defects in workmanship or materials in any MNA Product manufactured by MNA and sold to Customer hereunder. MNA will not, however, defend or indemnify Customer or its agents or employees with respect to claims or demands that allege causes of action other than defects in workmanship or materials in MNA Products.

In the event that a third-party claim, demand, loss, judgment, expense, cost, damage or injury alleges multiple causation factors, including both defects in workmanship or materials and an independent act or omission by Customer, MNA will not defend or indemnify Customer for those aspects of the claim other than the allegations of defects in workmanship or materials.  Under these circumstances, if the third-party subsequently dismisses or voluntarily decides not to prosecute a claim for an alleged independent act or omission against Customer, MNA will not be liable for any attorneys' fees or costs incurred by Customer prior to the third-party's dismissal or decision not to prosecute such claim.

The aforesaid indemnity is further conditioned upon (a) prompt notice by Customer to MNA, (b) to the extent Customer has or is able to obtain control of the MNA Product, Customer providing MNA a reasonable opportunity to inspect the MNA Product at MNA's laboratory at least thirty (30) business days prior to any MNA decision on indemnification, and (c) the full cooperation of Customer in the defense of any claim, demand, or cause of action. MNA shall not be responsible for fees or costs unreasonably incurred by Customer prior to any acceptance by MNA of a tender of defense. Upon MNA's acceptance of tender of any defense, MNA shall have the right to exercise control over all aspects of the litigation, including selection of counsel. The provisions of this Section shall survive termination, for whatever reason, of this Agreement. In no case will MNA defend and/or indemnify Customer or its agents or employees from any alleged  claim, demand, loss, judgment, expense, cost, damage or injury solely caused by any alleged independent act or omission by Customer including by not limited to, the following:

a. Any express warranty of any MNA Product not approved by MNA, the use of any form of advertising, product or sales literature not provided by MNA, or any distribution or sale of any products for a purpose not intended or authorized by MNA.

b. Any personal injury, death, or property damage arising out of:

   i. Any act by Customer which changes the condition or form of the MNA Products sold by MNA, including any labels, warnings, or instructions relating to those products;
   ii. Any failure by Customer to maintain MNA Products in merchantable condition;
   iii. Any failure by Customer to participate in an MNA recall, including any alleged failure by Customer to inspect and/or remove a tire subject to an MNA recall;
   iv. Any failure by Customer to make such inspections, adjustments, tests or servicing which Customer has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of MNA Products;
   v. Any MNA Products which, after sale by MNA, have been labeled or relabeled, repurchased or used as a container, part or ingredient of any other thing or substance by or for Customer;
   vi. Any failure by Customer to provide adequate warnings of product hazards or instructions for use of the MNA Product;
   vii. The result of any fitments or procedures that do not fully comply with the original equipment manufacturers' or the tire manufacturers' fitment requirements, technical specifications or service and safety information;
   viii. Any claims or litigation arising from Customer's sales or servicing of used, altered, second-hand, retreaded, re-grooved or remanufactured products;
   ix. Any matter in which the Customer or its agents have failed to preserve or retain the artifacts (tire, wheel, etc.) that are the subject of the litigation;
   x. The negligence or willful misconduct of Customer; or
   xi. Any claim involving an MNA Product which is retreaded utilizing the Michelin Retread Technologies, Inc. retreading process.

Customer shall not be entitled to any form of implied or equitable indemnification at any time, whether based on a theory of contract, torts (including negligence), strict liability or otherwise, and any right thereto is hereby irrevocably waived and disclaimed by Customer.

18) **INDEMNIFICATION BY CUSTOMER**.  Customer shall defend, indemnify and hold MNA and its agents, employees, and affiliates harmless from and against any and all expenses, costs (including reasonable attorneys' fees), claims, demands, damages, liability, suits or the like arising from or related to: (i) the failure of Customer  to perform any of its obligations hereunder; (ii) breach on the part of Customer of any representation, warranty, covenant, term or provision herein; (iii) negligence, errors, act, or omission on the part of Customer or its affiliates, subcontractors, consultants, employees, agents or representatives; (iv) provision by Customer of any services or products (other than the MNA Products), including by way of example and not limitation, provision of any services or replacement parts not supplied by MNA; or (v) operation of the business of Customer.  The provisions of this Section shall survive termination, for whatever reason, of this Agreement.

19) **LIMITATION OF ACTIONS.**  No suit or claim based on any legal clam, regardless of form, arising out of or in any way connected with this Agreement, may be brought by Customer (or any party claiming by,

Agreement #: 1757.1

through, or under Customer) more than one year after such legal claim accrued.

20) **LIMITATION OF LIABILITY.** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, TREBLE, PUNITIVE, MULTIPLE OR ENHANCED DAMAGES, OR FOR LOST PROFITS, LOST REVENUES, OR DIMINUTION IN VALUE, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR EITHER PARTY'S PERFORMANCE HEREUNDER. IN NO EVENT SHALL EITHER PARTY'S LIABILITY FOR DAMAGES EXCEED THE ACTUAL DAMAGES SUFFERED BY THE DAMAGED PARTY. The limitations of liability set forth in this Section shall not apply to a party's obligation to indemnify and defend the other against certain third party claims.

21) **RECORDS AND RIGHT TO AUDIT.** Customer agrees to establish and retain, for a period of seven (7) years from the date of creation, full and accurate records regarding MNA sales, adjustments, advertising, tax records, and programs. Upon 72 hours written notice, MNA shall have the right to conduct complete audits of the administration and compliance of Customer with this Agreement.

Audits shall occur from time to time at MNA discretion under the terms of this Agreement. The Customer agrees to provide sales results and supporting documentation in support of its commitment to the provisions of this Agreement. MNA reserves the right to immediately withdraw all benefits under this Agreement if Customer fails to provide supporting documentation to MNA's satisfaction.

In the event of discrepancies or noncompliance:

A.  Customer shall immediately reimburse and pay to MNA any bonuses, benefits, payments or credits made to Customer under this Agreement, including under MNA's National Account Program, MNA's North American Fleet Account Program, or other "MNA-billed" third party programs;

B.  MNA, at its option, may reduce, recoup, or offset any bonuses, benefits or credits due to Customer under this Agreement by the amounts of any bonuses, benefits, or credits which Customer improperly received;

C.  Customer shall forfeit any bonuses, benefits, or credits due pursuant to this Agreement, including, but not limited to, any volume bonus or share of account allowances; and

D.  MNA, at its option, may terminate this Agreement.

22) **AUTOMATIC TERMINATION.** This Agreement shall terminate automatically, without notice by either party, upon the occurrence of any of the following events: (i) dissolution of either party, whether by operation of law or otherwise; (ii) insolvency of either party, for the benefit of creditors or the institution of proceedings under the insolvency or bankruptcy laws of which either party is the subject; (iii) any change in the ownership or management of Customer as described in this Agreement, unless prior to the occurrence of such change in ownership or management, MNA is notified of the change in writing and gives written approval; or (iv) any attempted assignment by Customer of this Agreement or any right or interest arising from this Agreement without the prior written consent of MNA.

23) **TERMINATION WITH OR WITHOUT CAUSE**. MNA and Customer each shall have the absolute right to terminate this Agreement, with or without cause, upon thirty (30) days' prior written notice of such termination by the terminating party. Notwithstanding the foregoing, MNA shall have the absolute right to terminate this Agreement, or to exclude certain Products from this Agreement, immediately and without notice to Customer whatsoever in the event of a breach by Customer of any provision of this Agreement or any Exhibits or by Customer or its affiliates of any other agreement with MNA or its affiliates, including the payment terms. Such a breach is just and good cause for termination of this Agreement.

24) **CONSEQUENCES UPON TERMINATION**. Upon termination of this Agreement (however arising, including expiration):

a.  Customer shall cease to be an authorized commercial customer and shall not, from the effective date of any termination or expiration, refer to itself as such in any way whatsoever, whether expressly or by implication.

b.  All sums owing from Customer to MNA or from MNA to Customer shall become immediately due and payable. In order to ensure prompt payment, each party agrees to cooperate and work with the other in determining and processing all such amounts due. MNA shall have the right to apply any amounts owed by MNA or any affiliate of MNA (including but not limited to credits, bonuses or rebates earned or payable under this Agreement) to Customer (or any person or entity affiliated with Customer) in reduction of any amounts due MNA.

c.  Without limiting or altering its indemnification obligations pursuant to this Agreement, Customer shall cease performing warranty services for customers and shall instead direct such customers to an authorized MNA customer, as directed by MNA. Customer shall, within thirty (30) calendar days following the termination date of this Agreement, submit any pending warranty claims with respect to MNA Products. Any claims submitted by Customer after that date will be returned to Customer unprocessed.

d.  Customer shall cease making sales to government agencies on MNA's behalf and shall, instead direct such customers to an authorized MNA customer, as directed by MNA. Customer shall, within thirty (30) calendar days following the termination date of this Agreement, submit any pending national account, government or military exchange claims for MNA Products and associated services. Any claims submitted by the Customer after that date will be returned to the Customer unprocessed.

e.  Neither party shall be liable to the other for any damages or losses resulting solely from termination of this Agreement. Without limiting the Limitation of Liability Section, in no event shall MNA be liable for any punitive, consequential or incidental damages arising from enforcement or termination of this Agreement.

f.  Customer shall cease and desist from displaying or using any MNA Brand or other Mark.

Where either party gives written notice that it intends to terminate this Agreement without cause, MNA, during any such notice period, may consider (but is not obligated to accept) orders for MNA Products from Customer only up to a dollar value not exceeding Customer's average purchases of similar MNA Products for any like period of time during the six (6) month period immediately preceding the giving of notice. If, at any time any such notice is given, Customer has a debit balance in its MNA account, MNA shall be entitled to reject any orders by Customer until

Agreement #: 1757.1

Customer no longer has a debit balance, at which time orders may be met and payment terms shall be cash in advance of delivery of MNA Products to Customer.

Where this Agreement is terminated for abuse or misuse of any Brand Program or other breach of this Agreement by Customer, then, without limiting MNA's rights to indemnification with respect thereto or other rights available at law or equity:

a.  Customer shall immediately reimburse and pay to MNA any bonuses, benefits, payments or credits made to Customer under such Brand Programs;

b.  MNA, at its option, may reduce, recoup, or offset any bonuses, benefits or credits due to Customer under any Brand Program by the amounts of any bonuses, benefits, or credits which Customer improperly received or any other amounts owed to MNA; and

c.  Customer shall forfeit any bonuses, benefits, or credits due pursuant to any Brand Program, including but not limited to any volume bonus allowances.

Customer shall also reimburse MNA for any fees or fines incurred as a result of Customer's abuse of Brand Programs including but not limited to taxes and legal fees.

25) **TRANSACTIONS AFTER TERMINATION**. Business dealings between the parties following termination of this Agreement are not intended to and shall not result in a renewal of this Agreement or a waiver of such termination.

26) **FORCE MAJEURE**. Except for payment obligations, neither party shall have any liability or be deemed to be in default of this Agreement, if prevented from performing its obligations under this Agreement by reason of "force majeure" which shall include fire, flood, war, labor disturbances, pandemic, strikes, explosions, sabotage, inability to obtain raw material or supplies or equipment, governmental laws or requirements or regulations, or any cause or circumstance beyond the reasonable control of the affected party (each such occurrence a "Force Majeure Event") and which by the exercise of due diligence such party is unable to overcome. The party affected by force majeure shall give prompt written notice to the other party. The continuance of force majeure beyond three (3) consecutive months shall entitle either party to terminate this Agreement. In the event of shortage of production or supply of Products for any reason, MNA reserves the right to allocate its supplies of Products to itself and such other distributors or customers in its sole discretion without incurring any liability to Customer arising therefrom.

27) **COMPLIANCE WITH LAWS**.

A.  In performing its obligations under this Agreement, the parties agree to comply with all applicable laws, rules and regulations of United States including, but not limited to, all applicable safety, labor, employment, tax, export control and environmental laws. The foregoing obligations include, but are not limited to, all requirements of applicable laws and regulations relating to money laundering, anti-corruption, anti-terrorism, trade embargoes and economic sanctions (collectively, "Sanctions"), now or hereafter in effect.

B.  Export Controls, Economic Sanctions and Trade Embargoes

Customer shall not cause MNA to, either directly or indirectly, risk any potential violation of any applicable Sanctions. Furthermore, Customer will not supply, sell, transfer, export, re-transfer, re-export, otherwise make available or use any MNA Product supplied by MNA in order to circumvent, evade or avoid any applicable Sanctions.

Customer shall only supply, sell, transfer, export, re-transfer, re-export, otherwise make available or use MNA Products as permitted by applicable law and shall not supply, sell, transfer, export, re-transfer, re-export, or otherwise make available, either directly or indirectly, any MNA Products:

i.  To any party resident, located, registered, incorporated, domiciled or head-quartered in any jurisdiction subject to Sanctions;
ii. To any individual, entity or body either: (i) specifically designated or listed under Sanctions; (ii) owned or controlled by any person specifically designated or listed under Sanctions; or, (iii) acting for or on behalf of any person specifically designated or listed under sanctions ("Restricted Persons"); and
iii. For any use, purpose or activity which is prohibited or otherwise restricted under Sanctions, without MNA's prior written approval.

Where MNA has reasonable cause to suspect that any Product may be or has been supplied, sold, transferred, exported, re-transferred, re-exported, otherwise made available to any jurisdiction subject to Sanctions, or to a Restricted Person, or for any use, purpose or activity which is prohibited or otherwise restricted under Sanctions, MNA reserves the right to:

i.  Immediately suspend its performance under this Agreement;
ii. Request further information or documentary evidence from the Customer, including but not limited to:
    a.  Any licenses, authorizations, permits, or approvals obtained by the Customer with respect to the supply, sale, transfer or export of the MNA Products;
    b.  Any End User Certificates or Undertakings supplied to the Customer;
    c.  Any shipping or commercial documentation, including invoices or bills of lading, in order to verify the end use(s) or end user(s) of the MNA Products; and/or
iii. Refuse any future sale, supply, transfer or export of the Seller Products to the Customer.

Customer shall immediately notify MNA if Customer, or any of its affiliates, or any of their respective directors or officers is a Restricted Person. Furthermore, Customer shall immediately inform MNA if Customer is aware or has reasonable cause to suspect that either the Customer, or any of its affiliates, or any of their respective directors or officers may become a Restricted Person.

Agreement #: 1757.1

In the event that any Product supplied by MNA is re-supplied, re-sold, re-transferred, re-exported, re-distributed or otherwise made available to any third party, Customer shall take all actions reasonably necessary to ensure that such third parties: (a) Comply with any applicable Sanctions; and, (b) Do not cause MNA to violate any applicable Sanctions.

Customer shall indemnify and hold harmless MNA from and against any losses, costs, claims, causes of action, damages, liabilities and expense, including attorneys' fees, any expense of litigation or settlement, and court costs, arising from any noncompliance with Sanctions or any other applicable law by Customer, and Customer shall compensate MNA for any losses and expenses resulting thereof. Customer shall be responsible for any act or omission of Customer, its officers, employees, affiliates, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this clause.

C. If Customer becomes aware of any fraud or any other similar act involving actual or alleged dishonesty or illegal acts in any way related to this Agreement, whether such fraud, illegal or dishonest act involves Customer, MNA (including their respective employees, owners, agents and subcontractors) or any other third party, Customer shall give prompt written notice of such actual or alleged fraud, dishonest or illegal act to MNA. Customer agrees that if the confirmed fraud or illegal act involves an abuse of a MNA program or payments and/or reductions given to Customer, Customer shall repay all amounts lost by MNA including, but not limited to, any fines or fees (including legal fees) incurred by MNA as a result of the fraud and MNA's efforts in investigating the fraud or enforcing sections related to fraud or dishonesty in this Agreement.

D. MNA's employees are bound by a company Code of Ethics that prohibits corruption. MNA's policy against corruption applies globally to all of MNA's affiliates, and are not flexible based on the laws or common practices in any given country. MNA will terminate relationships with its suppliers, service providers or customers that do not demonstrate the willingness to follow MNA's anticorruption policy. A full copy of MNA's Code of Ethics will be made available to Customer upon request.

28) **NO ASSIGNMENT BY CUSTOMER**. Customer may not assign this Agreement, or any of its rights or obligations hereunder, without MNA's prior written consent. Any assignment by Customer shall be null and void. This Agreement and any right hereunder or interest herein may be assigned at any time by MNA to any third party.

29) **NO IMPLIED WAIVERS BY MNA OR CUSTOMER.** Either party's failure to enforce or exercise any of its rights under any provision of this Agreement shall not be construed as a waiver of such rights. No custom, practice or course of dealing constitutes a waiver of any provision of this Agreement.

30) **RELATIONSHIP OF THE PARTIES.** This Agreement applies to the sale of MNA Products to Customer by MNA and is not intended by either party to constitute a franchise relationship between the parties. Customer has not paid a franchise fee to MNA and is not operating pursuant to a business system supplied by MNA. Further, this Agreement shall not be construed to create a joint venture, association, partnership, employment, or other force of business organization or agency relationship between Customer and MNA.

31) **GOVERNING LAW AND JURISDICTION**. This Agreement and the rights and obligations of the parties shall be governed by, and interpreted, construed and enforced in accordance with, the laws of the State of South Carolina. without regard to any conflict of laws provision. All court actions, proceedings, or arbitrations filed under or in connection with this Agreement shall be filed in the federal and state courts and arbitration tribunals (as applicable) in Greenville County, South Carolina, and the parties waive all questions of personal jurisdiction and venue for the purpose of carrying out this provision.

32) **DISPUTE RESOLUTION**. **The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between representatives who have authority to settle this controversy.**

**Controversies and claims arising out of or relating to this Agreement, if not settled by negotiation, may be settled by arbitration at either party's election. Arbitration shall be final and binding upon the parties, their successors and assigns. All arbitration proceedings shall be held in Greenville County, South Carolina. MNA may initiate arbitration of a dispute by delivery of a demand to Customer. The arbitration shall be conducted pursuant to the Federal Arbitration Act, as amended from time to time. All hearings shall be conducted on an expedited schedule, and all proceedings shall be confidential. The non-prevailing party shall pay all costs of the arbitration or other legal proceedings, including the fees and expenses of the Arbitrator and the reasonable attorneys' fees and expenses of the prevailing party.**

**CUSTOMER AND MNA HEREBY WAIVE ANY AND ALL RIGHTS EACH MAY HAVE TO A JURY TRIAL IN CONNECTION WITH ANY CLAIMS, LITIGATION, PROCEEDING OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO: (A) THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, (B) ANY TRANSACTIONS UNDER THIS AGREEMENT, OR (C) ARISING OUT OF ANY DISCUSSIONS, NEGOTIATIONS OR COMMUNICATIONS INVOLVING OR RELATED TO ANY OF THE TRANSACTIONS CONTEMPLATED HEREUNDER.**

**Notwithstanding the other provisions of this Section, MNA may also seek equitable relief in a court of competent jurisdiction.**

33) **SEVERABILITY OF PROVISIONS**. If any provision of this Agreement shall be declared illegal, void or otherwise unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

34) **SURVIVAL OF OBLIGATIONS**. All obligations of the parties pertaining to payment, reimbursement, indemnification, warranty, and all obligations hereunder which by the terms of this Agreement arise at or after termination, shall survive any termination of this Agreement. Nothing in this Agreement shall be construed to affect in any way the applicable statute of limitations on third party claims.

35) **NOTICES.** Any notice required or permitted by this Agreement shall be in writing and may be made by personal delivery or by first-class, registered or certified mail to the addresses listed in the applicable Sales Terms.